# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:05CV257

| | |
|---|---|
| CADMUS COMMUNICATIONS CORPORATION, ) ) ) Plaintiff, ) ) v. ) ) JACKIE L. GOLDMAN, f/k/a JACKIE ) PETET, d/b/a SCREAMING FISH LLC, ) and SCREAMING FISH LLC, ) ) Defendants. ) ) | ORDER |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion to Compel Production of Settlement Agreement" (Document No. 27) and "Plaintiff's Brief in Support of Motion to Compel Production of Settlement Agreement" (Document No. 28), filed September 7, 2006; "Defendant's Response to Plaintiff's Motion to Compel Production of Settlement Agreement" (Document No. 29), filed September 18, 2006; and "Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Compel Production of Settlement Agreement" (Document No. 30), filed September 27, 2006.

This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A), and this motion is now ripe for disposition. Having considered the record, pleadings, and applicable authority, the undersigned will <u>grant</u> Plaintiff's Motion to Compel.

## BACKGROUND

Plaintiff Cadmus Communications Corporation ("Plaintiff") provides printing, packaging and related services to corporate customers. In late 2001 or early 2002, Defendant Jackie Goldman a/k/a

Jackie Petet ("Goldman") and d/b/a Screaming Fish LLC ("Screaming Fish," and collectively with Goldman, "Defendants"), acting as an independent contractor or production manager for Cox Communications Inc. ("Cox") facilitated a contract between Plaintiff and Cox for printing and related services.[1] Plaintiff filed suit against Defendants in June 2005 claiming that Goldman attempted to extract illegal kickbacks from Plaintiff for the Cox project in violation of the Robinson-Patman Act (15 U.S.C. § 13) and the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1 *et seq*.). Defendants deny Plaintiff's allegations and counterclaim that Plaintiff is indebted to them for commissions earned.

In the pending motion, Plaintiff seeks the production of a certain Settlement Agreement between Cox and Goldman resolving a Georgia lawsuit[2] involving Cox and Defendants with facts that are similar to those Plaintiff alleges in this action. Goldman was a non-party to the Georgia lawsuit, but nevertheless was a party to the resulting Settlement Agreement. Plaintiff claims it explicitly requested the Settlement Agreement document in the course of discovery. Defendants object to producing the Settlement Agreement due to a confidentiality clause, and also dispute its relevance to the pending action. Plaintiff contends that the Settlement Agreement may contain information addressing Defendants' claims and defenses, such as demonstrating that Cox has paid Defendants for the projects for which Defendants seek to collect in their counterclaim, or by addressing broader issues concerning the Cox-Goldman relationship. Plaintiff has offered, and apparently remains willing, to enter into a protective order to guard the Settlement Agreement's

---

[1] The parties disagree on the proper characterization of Goldman's relationship with Cox.

[2] <u>Graphic Solutions Group, Inc. v. Cox Communications, Inc., and Screaming Fish, LLC</u>, Civil Action No. 03-A11068-5, Superior Court of Gwinnet County, Georgia.

confidentiality. Defendants did produce a redacted version of the Settlement Agreement which only contained the names of the parties to the agreement and the provision related to the agreement's confidentiality.

## DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

"The key phrase in this definition - - 'relevant to the subject matter involved in the pending action' - - has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). The rules of discovery are to be accorded broad and liberal construction. See Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a litigant is not entitled to conduct discovery that is intended to annoy, embarrass, or oppress the opposing party. See Fed. R. Civ. P. 26(c). Furthermore, "[d]iscovery of matter not 'reasonably calculated to lead to the discovery of admissible evidence' is not within the scope of Rule 26(b)(1)." Oppenheimer, 437 U.S. at 351-52.

Whether to grant or deny a motion to compel is generally left within the district court's broad discretion. See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929

(4th Cir. 1995) (denial of motions to compel reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting district court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

### *Relevance*

Defendants contend that the Settlement Agreement is not sufficiently relevant to the case and therefore the Motion to Compel should be denied. Plaintiff claims that Defendants failed to timely assert a relevance objection in their discovery responses or in subsequent correspondence between the parties. Plaintiff contends that Defendants have thus waived their objections concerning relevance, stating "[i]t is well settled that failure to make a timely objection in response to a Rule 34 request results in waiver." Phillips v. Dallas Carriers Corp., 133 F.R.D. 475, 477 (M.D.N.C. 1990); see also Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc., 200 F.R.D. 255, 258 (M.D.N.C. 2001) (objections to Rule 34 requests are implicitly waived when not asserted in discovery responses).

Plaintiff further argues that even if relevance arguments are considered, they still win. "Discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action." Marker v. Union Fid. Life Ins. Co., 125 F.R.D. 121, 124 (M.D.N.C. 1989). Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Federal Rule of Evidence 402 states: "[a]ll relevant evidence is admissible...."

Plaintiff presents a persuasive argument that the Settlement Agreement has information that

is relevant to the subject matter of the instant litigation. Plaintiff characterizes the current action as turning on whether or not Defendants had authority from Cox to collect compensation from Plaintiff for the projects Plaintiff performed for Cox. Assuming that to be true, the Settlement Agreement between Cox and Defendants may shed light on their business relationship in general, and possibly on their arrangement as to the Cadmus-Cox contract. Defendants contend that the Georgia lawsuit -- with similar facts to the instant case -- nonetheless did not address Plaintiff's projects. However, Plaintiff's "Reply to Defendants' Response ..." (Document No. 30) attached an Answer and Cross-Claim (against Screaming Fish) from the Georgia lawsuit that they claim includes references to *all* projects Defendants were involved in, and "*several of Cox's vendors*" -- which would necessarily include Plaintiff. Because the issues in the cases are so similar, and considering Cox's Answer and Cross-Claim in that action, it is reasonable to expect that the Settlement Agreement may address information relevant to this action. See Vardon Golf Co. v. BBMG Golf Ltd., 156 F.R.D. 641, 651 (N.D. Ill. 1994) (party seeking discovery may simply articulate the kind of information it reasonably expects to find in the documents sought).

### *Confidentiality*

Defendants also argue that the confidentiality provision in the Settlement Agreement prevents its production. Defendants cite Rule 26(b)(1) for the proposition that it allows discovery only "of any matter, not privileged, that is relevant to the claim or defense of any party" (emphasis added). Nevertheless, Defendants concede in their "Response to Plaintiff's Motion to Compel" that "courts sometimes compel production of confidential settlement agreement[s]."

As one court has opined:

> a general concern for protecting confidentiality does not equate to

> privilege ... information and documents are not shielded from discovery merely because they are confidential. Moreover, this Court has held that in the context of settlement agreements the mere fact that the settling parties agree to maintain the confidentiality of their agreement does not serve to shield the agreement from discovery. Simply put, litigants may not shield otherwise discoverable information from disclosure to others merely by agreeing to maintain its confidentiality.

DirecTV, Inc. v. Puccinelli, 224 F.R.D. 677, 684-85 (D.Kan. 2004).

Defendants contend, however, that "[w]hen the requested discovery concerns a confidential settlement agreement, the majority of courts considering the issue have required the requesting party to meet a heightened standard in deference to Federal Rule of Evidence 408 and the public policy to encourage settlements and to uphold confidentiality provisions." Young v. State Farm Mut. Auto Ins. Co., 169 F.R.D. 72, 76 (S.D. W.Va. 1996). Defendants note that this heightened standard is set forth in Bottaro v. Hatton Assocs., 96 F.R.D. 158 (E.D.N.Y. 1982): "the better rule is to require some particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement." In Fidelity Federal Savings and Loan Ass'n v. Felicetti, 148 F.R.D. 532, 534 (E.D.Pa. 1993), the court characterized the effect of the heightened standard as "switch[ing] the burden of proof from the party in opposition to the discovery to the party seeking the information." See Morse/Diesel, Inc. v. Trinity Industries, Inc., 142 F.R.D. 80, 84 (S.D.N.Y. 1992).

Other courts have rejected the heightened standard: "[t]he Federal Rules of Civil Procedure do not speak to a 'particularized showing,' but to what is 'reasonably calculated to lead to the discovery of admissible evidence." Vardon Golf Co. v. BBMG Golf Ltd., 156 F.R.D. 641, 650-51 (N.D.Ill. 1994). Even some courts following the "particularized showing" requirement find that it

should not be "construed in a manner inconsistent with the broad application of relevance applicable to discovery matters under Rule 26(b)(1)." Fidelity, 148 F.R.D. at 534, quoting Morse/Diesel, Inc., 142 F.R.D. at 84. "Courts placing the burden on the opponent of discovery to show that the evidence is not likely to lead to the discovery of admissible evidence follow Bennett v. La Pere, 112 F.R.D. 136 (D.R.I. 1986)." Vardon, 156 F.R.D. at 650. Bennett rejected Bottaro and "concluded that policies favoring sweeping discovery mandate placing the burden of proving that the information sought is not reasonably calculated to lead to the discovery of admissible evidence on the opponent of discovery." Id.

This Court declines to determine which standard is most applicable to the instant case, finding instead that Plaintiff has satisfied both the "particularized showing" and "reasonably calculated" burdens. Furthermore, the Court is guided by the logic of the Fourth Circuit,

> [t]here is an important distinction between privilege and protection of documents, the former operating to shield the documents from production in the first instance, with the latter operating to preserve confidentiality when produced. An appropriate protective order can alleviate problems and concerns regarding both confidentiality and scope of the discovery material produced in a particular case.

Virmani v. Novant Health Inc., 259 F.3d 284, 288 n.4 (4th Cir. 2001). The Court finds that Defendants' legitimate interest in the confidentiality of the Settlement Agreement can be preserved by a protective order. Discovery of the Settlement Agreement need not be prevented entirely.

## CONCLUSION

The undersigned finds that the disputed Settlement Agreement should be subject to discovery due to the possibility it contains information relevant to this case. Whether the information discovered is ultimately admissible at trial will be a decision for the presiding district judge, but the

7

undersigned finds that it is reasonable to assume for discovery purposes that the Settlement Agreement is likely to contain admissible evidence or to lead to the discovery of admissible evidence.

**IT IS, THEREFORE, ORDERED** that "Plaintiff's Motion to Compel Production of Settlement Agreement"(Document No. 27) is **GRANTED**.

**IT IS FURTHER ORDERED** that production of the Settlement Agreement shall be subject to a protective order. The parties, jointly if possible, shall submit a proposed protective order on or before **December 1, 2006**. Within five (5) days of the Court filing a protective order, the Defendants shall produce the Settlement Agreement, subject to the terms of the Court's protective order.

**SO ORDERED**.

Signed: November 17, 2006

David C. Keesler
United States Magistrate Judge